IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| SANDRA GALE HALL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-11 |
| | ) | |
| | ) | JUDGE HAYNES |
| WAL-MART STORES EAST, LP. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff Sandra Gale Hall[1] filed this action alleging retaliatory discharge and disability discrimination under the Tennessee Handicap Act, Tenn. Code Ann. § 8-50-103 ("THA"), against her former employer, Defendant Wal-Mart Stores East, LP. In particular, Plaintiff contends that she was terminated in retaliation for filing a workers' compensation claim and for her disability. Plaintiff originally filed her complaint in the Circuit Court for Marshall County, Tennessee, but the case was removed to federal court upon motion by Defendant without objection. Defendant's answer denied Plaintiff's factual allegations and the parties have completed discovery.

Before the Court is Defendant's motion for summary judgment, contending, in sum, that Plaintiff cannot establish a prima facie case of retaliation or disability discrimination as a matter of law. (Docket Entry No. 20) Specifically, on the retaliatory discharge claim, Defendant

_____

[1]Plaintiff has changed her legal name to Sandra Gale Hall Frieson.

1

argues that Plaintiff cannot establish that her workers' compensation claim was a substantial factor in her termination or pretext. On the disability discrimination claim, Defendant argues that Plaintiff cannot establish that she met Defendant's legitimate performance expectations or that she was terminated based solely on her disability, and that no reasonable accommodation was required.

Plaintiff responds that she "will prevail on her retaliatory discharge claim because she is able to either prove all four factors or at least create genuine issues of fact over all four factors." (Docket Entry No. 24, at 9). Plaintiff further argues that she has established the elements of a disability discrimination claim under the THA.

For the reasons that follow, the Defendant's motion for summary judgment should be granted. Plaintiff's retaliatory discharge claim fails because Plaintiff has not presented proof sufficient to establish that her claim for workers' compensation benefits was a substantial factor in Defendant's decision to terminate her or pretext. Plaintiff's disability discrimination claim fails because Plaintiff has not presented proof to establish that Defendant terminated her "based solely on" her disability.

2

## A.   Findings of Fact[2]

When Plaintiff began her employment, Defendant was operating under a "Coaching for Improvement" policy with four levels of discipline: (1) verbal coaching, (2) written coaching, (3) Decision Making Day coaching, and (4) termination (the "original policy").  (Docket Entry No. 29, Creel Deposition, at 27-28).  Each coaching level remained active for a period of twelve months (Docket Entry No. 32, Moss Deposition, at 26), and the "coachings stack[ed] on top of another.  They are a domino effect." Id. at 31.

Effective November 6, 2006, Defendant instituted a revised Attendance/Punctuality Policy for all hourly employees (the "revised attendance policy").  (Docket Entry No. 32, Attachment 2).  Defendant held meetings to explain the revised attendance policy prior to its implementation.  On October 5, 2006, Plaintiff attended one such meeting and executed a written acknowledgment that she had reviewed the revised attendance policy (the "written

_____

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment.  Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).  As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Plaintiff submitted an affidavit taken on November 19, 2008 (Docket Entry No. 28), that contradicts in part her earlier deposition testimony.  "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986)(citations omitted).  See also Penny v. United Parcel Service, 128 F.3d 408, 415 (6th Cir. 1997) (rejecting affidavit because party cannot create genuine issues of material fact by filing affidavit that essentially contradicts prior deposition testimony).  The Court rejects Plaintiff's affidavit.

Although Plaintiff contends that factual disputes exist, the Court concludes that the factual disputes are not material and this section constitutes a finding of fact under Fed. R. Civ. P. 56(d).

3

acknowledgment"). (Docket Entry No. 32, Attachment 4). The revised attendance policy defines

the relevant terms as follows:

> **Occurrence** means any time away from scheduled work that is not approved by your Supervisor or Manager as set forth in this Policy . . . An absence for three or fewer consecutive workdays for the same reason will count as one absence.

> **Incomplete shift** means beginning work 10 minutes or more after scheduled start time (tardy) or leaving work before the end of your scheduled shift without approval of your Supervisor or Manager. Three incomplete shifts, through any combination . . . will equal one absence occurrence.

> **If you have three absence occurrences in a rolling six-month period, you will have the opportunity to discuss your absences with management during a personal discussion. If you have more than three absence occurrences in a rolling six-month period, you will be disciplined. If you have an active Coaching(s) for any reason, upon incurring four absence occurrences, you will be advanced to the next Coaching leave beyond your current active coaching. Thereafter, you will continue to advance to the next Coaching level for *each* subsequent absence occurrence.**

| Absence Occurrences | Action |
|---|---|
| 4 | Verbal Coaching (or next coaching level) |
| 5 | Written Coaching (or next coaching level) |
| 6 | Decision Making Day (or next coaching level) |
| 7 | Termination |

(Docket Entry No. 32, Attachment 2, at 2-3 (bold emphasis added, italicized emphasis in

original); Docket Entry No. 29, Creel Deposition, at 63-64). Certain defined events, such as

workers' compensation, do not result in discipline. (Docket Entry No. 32, Attachment 2, 1-2).

Active coachings from the original policy remained in effect under the revised attendance

4

policy. (Docket Entry No. 32, Moss Deposition, at 27). Under both the original policy and revised attendance policy, managers did not have discretion to waive steps in the coaching process or to impose a lesser level of coaching. (Docket Entry No. 31, Padgett Deposition, at 62). However, managers had a "little bit more leeway" to excuse absences under the original policy than under the revised attendance policy. (Docket Entry No. 32, Moss Deposition, at 37). Specifically, managers had "some discretion" to approve doctor appointments under the original policy, but doctor appointments were unapproved absences under the revised attendance policy, except for leave related to Family Medical Leave Act or workers' compensation claims. (Docket Entry No. 32, Moss Deposition, at 21-23; Docket Entry No. 29, Creel Deposition, at 55). According to Creel, absence occurrences that had not yet resulted in coachings under the original policy were forgiven and absence occurrences began accruing from the effective date of the revised attendance policy.[3] (Docket Entry No. 29, Creel Deposition, at 62).

**Plaintiff's Employment**

Defendant hired Plaintiff to work at its Lewisburg, Tennessee store in May 2005 as a cashier. (Docket Entry No. 25, Plaintiff's Response to Material Facts, at ¶ 1). Plaintiff was promoted to Customer Service Manager in November 2005. Id. at ¶¶ 1-2.

On December 12, 2005, Plaintiff received her first level of discipline, a verbal coaching, relating to cash register overages. (Docket Entry No. 32, Attachment 3, at 3). Plaintiff does not dispute that the verbal coaching occurred or that it was appropriate. (Docket Entry No. 26,

---

[3] The revised attendance policy does not discuss a "grace period" for uncoached absence occurrences. (Docket Entry No. 32, Attachment 2). However, the Court construes all factual contentions in the light most favorable to Plaintiff, the nonmoving party. Duchon, 791 F.2d at 36.

Plaintiff's Deposition, at 122-123).

On April 10, 2006, Plaintiff received her second level of discipline, a written coaching, for seven unapproved absences in a rolling six-month period. (Docket Entry No. 32, Attachment 3, at 2). Plaintiff does not dispute that the written coaching occurred or that it was appropriate. (Docket Entry No. 26, Plaintiff's Deposition, at 121-122).

On August 26, 2006, Plaintiff received her third level of discipline, a Decision Making Day coaching, for having more than three unexcused absences, including at least four incomplete work days. (Docket Entry No. 32, Attachment 3, at 1). Plaintiff does not dispute that the Decision Making Day coaching occurred. (Docket Entry No. 26, Plaintiff's Deposition, at 123). Plaintiff testified that the coaching was inappropriate because she had medical excuses, but that it was consistent with company policy. Id at 123-24. Plaintiff further testified she understood there were issues with her attendance and the next step would be her termination. Id. at 124-25.

On November 6, 2006, Plaintiff suffered a work-related injury and filed a worker's compensation claim.[4] Id. at 57. Plaintiff applied for and received a four-week medical leave of absence. (Docket Entry No. 25, Plaintiff's Response to Material Facts, at ¶¶ 16-17). Plaintiff returned to work on December 7, 2006 with work restrictions. Id. at ¶ 18. Plaintiff was placed on temporary alternative duty and assigned to answering telephones and working as a People Greeter. Id. Defendant did not furnish Plaintiff with a chair when she worked as People Greeter, but Plaintiff obtained a chair for herself and did not work outside her medical restrictions. Id. at ¶ 19; Docket Entry No. 26, Plaintiff's Deposition, at 60. Plaintiff worked in the temporary

---

[4] The claim was denied in December 2006 by a third party, Claims Management, Inc. ("CMI"). The circumstances surrounding the cause of Plaintiff's fall and the subsequent denial of her workers' compensation claim are not material to the issues presented here.

6

alternative duty until she was terminated. (Docket Entry No. 27, Plaintiff's Deposition, at 233).

Plaintiff testified she received many "frowns" for sitting, but that "nobody ever said anything" about her use of the chair, nothing happened as a result of sitting on benches, and Plaintiff was not terminated for sitting down. (Docket Entry No. 26, Plaintiff's Deposition, at 131, 136, 138).

After Plaintiff returned to work from her injury, she accumulated additional unauthorized absences from work. (Docket Entry No. 26, Plaintiff's Deposition, at 127, 142-43; Docket Entry No. 26, Attachment 8). She testified as follows:

> Q. Do you know whether you had three unauthorized absences in the previous six months?
>
> A. Of 1-8-07?
>
> Q. Yes, prior to January 8, 2007.
>
> A. Oh, I'm sure. I had to go home several days due to my back injury, because like I said, at first, I was not allowed, for the first two weeks, I was not allowed to have a chair at the door to sit in . . .[.]

(Docket Entry No. 26, Plaintiff's Deposition, at 127).

According to Plaintiff, when she returned to work, management treated her differently and would not speak to her, except in "have to" situations.[5] Id. at 10, 27-28, 46-47, 53-55. Plaintiff testified that Martin Padgett, store manager, challenged her proffered explanation of

---

[5] The Court notes that Plaintiff testified that other people without workers' compensation claims were not terminated for attendance problems. Plaintiff did not provide specific proof regarding these employees, such as the number and nature of absences, and Plaintiff did not assert this argument in her opposition papers. Plaintiff also testified that Defendant questioned her veracity upon her return by asking her about cash register shortages and a computer monitor. It is undisputed that Plaintiff was not terminated for either of these issues, (Docket Entry No. 29, Creel Deposition, at 107, 122; Docket Entry No. 31, Padgett Deposition, at 85, 112), and Plaintiff did not testify that these incidents were proof of her termination based upon the workers' compensation claim. (Docket Entry No. 26, Plaintiff's Deposition, at 10, 27-28).

7

injury and stopped speaking to her. Id. at 48-49. Padgett denied challenging Plaintiff's proffered reasons for the fall and denied that he stopped speaking to Plaintiff or instructed other managers to ignore Plaintiff. (Docket Entry No. 31, Padgett Deposition, at 105-106). Plaintiff also testified that Rachel Creel, assistant manager, and Tracey Moss, Plaintiff's supervisor, stopped speaking to Plaintiff upon her return. (Docket Entry No. 26, Plaintiff's Deposition, at 53-55, 88). Creel and Moss denied treating Plaintiff differently after the workers' compensation claim. (Docket Entry No. 30, Creel Deposition, at 124; Docket Entry No. 32, Moss Deposition, at 111). Moss testified that she did not observe Padgett or Creel treat Plaintiff differently. (Docket Entry No. 32, Moss Deposition, at 111).

After Plaintiff's return to work, she had additional absence occurrences under the revised attendance policy. (Docket Entry No. 32, Moss Deposition, at 33; Docket Entry No. 27, Attachment 8, Associate Attendance Report). According to Defendant, pursuant to the revised attendance policy, management held a personal discussion with Plaintiff about her absences in January 2007. Specifically, Moss testified that on January 8, 2007,[6] she conducted a personal discussion with Plaintiff about excessive absences in the presence of assistant manager Reynelle Smith. (Docket Entry No. 32, Moss Deposition, at 33, 35). Moss testified that at the personal discussion, she informed Plaintiff that Plaintiff had four absence occurrences, thus one "freebie," and that any additional absence occurrences would result in the next coaching level. Id. at 33. Moss documented the personal discussion on the written acknowledgment and it was signed by Moss and Smith. (Docket Entry No. 32, Attachment 4).

---

[6] The personal discussion is dated January 6, 2006. (Docket Entry No. 32, Moss Deposition, at 33).

8

Plaintiff disputes that this personal discussion occurred, testifying in pertinent part:

Q.  The bottom of this attendance policy has a personal discussion. It says "Personal Discussion Log," and it says, "A personal discussion regarding Sandra Hall's three (3) Unauthorized Absences in a sixth-month period occurred" on 1-8-06. There's a manager's signature of Tracey Moss, and a witness's signature of what looks like Raynelle . . . Do you recall having a personal discussion about three unauthorized absences with Tracey Moss?

A.  I do not.

Q.  Are you saying it didn't happen or you didn't –

A.  I don't believe that it did. I do not remember talking to her and Raynelle at the same time ever.

Q.  Do you remember talking to Tracey alone about your absences?

A.  The only time that I ever remember talking to Tracey on a, like an issue with like anything like this was the day that she terminated me.

Q.  So, if Tracey says she had a personal discussion with you, do you think she's lying?

A.  I'm saying I do not ever recall meeting with her and Raynelle at the same time, no, I did not. I'm positive of that.

                    *       *       *

Q.  . . . Are you uncertain as to whether you met with Tracey? . . .

                    *       *       *

A.  I am positive that I did not meet with Tracey and Raynelle at the same time. And this has January 8, 2006, and this has October 5, 2006.

Q.  Let me make that on January 8, 2007, did you ever meet with Tracey Moss?

A.  No. Well, 2, I think it was February 8, 2007, I was fired.

                    *       *       *

Q.  So, as of January 8, 2007, did Tracey Moss ever speak to you about your

9

attendance?

A.   I cannot recall.  I don't think so.

(Docket Entry No. 26, Plaintiff's Deposition, at 126-128).

Plaintiff missed work on February 2, 3, and 4, 2007.  Id. at 141.   According to

Defendant, this resulted in an absence occurrence.  (Docket Entry No. 27, Attachment 8,

Associate Attendance Report).   In Plaintiff's response to material facts, Plaintiff disputes that

her post injury absences were absence occurrences because she "never left early, arrived late or

missed work from her return . . . in December 2006 until her termination in February 2007."

(Docket Entry No. 25, Plaintiff's Response to Material Facts, at ¶¶ 21-24).   In response,

Defendant submitted documentation reflecting that Plaintiff's absences in January 2007 were

unrelated to her work-related injury.[7]  (Docket Entry No. 41, Attachment 1, at 10, 12, 15).

Moss consulted Padgett about coaching Plaintiff for her February 2007 absence

occurrence.  (Docket Entry No. 32, Moss Deposition, at 93-94).  Padgett instructed her to "take

Plaintiff to the next level" of coaching.  Id. at 94.  Moss reviewed the computerized coaching

system and determined that termination was the next level of coaching for Plaintiff.  Id.

Padgett recalled being notified by Moss or Creel that they were in the process of coaching

Plaintiff for excessive absenteeism.  (Docket Entry No. 31, Padgett Deposition, at 64).  Padgett

would have ultimately been responsible for terminating Plaintiff and would have been brought

paperwork indicating that Plaintiff would be terminated.  Id. at 64-65.

---

[7] Defendant filed a reply memorandum with supporting affidavits and documentation
(Docket Entry Nos. 39-41), to which Plaintiff filed an objection. (Docket Entry Nos. 43, 44).
The Court concludes that the reply memorandum and supporting documentation are appropriate
and, accordingly, overrules Plaintiff's objections to such filings.

10

On February 8, 2007, Moss called Plaintiff to the office and informed her that she was being terminated for excessive absenteeism. (Docket Entry No. 27, Plaintiff Deposition, at 150-51). Moss completed an "Exit Interview" form stating that Plaintiff was terminated for excessive absences and/or tardies. (Docket Entry No. 30, Attachment 2). Specifically, the Exit Interview form states that "Sandra has missed 5 unauthorized absences in last 6 month rolling period and at her personal discussion at 4 absences she was told her next level would be termination due to fact her has already had D-Day." Id. Plaintiff was designated as "Re-Hire Recommended." Id; Docket Entry No. 31, Padgett Deposition, at 114. Plaintiff, Joy Davis, Moss, and Padgett all signed the Exit Interview form. (Docket Entry No. 30, Attachment 2).

Plaintiff testified that she was not treated inconsistently with Defendant's attendance policies.

> Q. Do you contend that you were treated inconsistently with Wal-Mart policy regarding attendance?
>
> A. I don't think so.
>
> Q. You don't think you were treated inconsistently or you don't think you were treated consistently? I just want to be sure.
>
> A. I don't think I was treated too inconsistently.
>
> \*       \*       \*
>
> Q. Are you aware of any facts that make you think that Wal-Mart did not follow its policy regarding attendance?
>
> A. No. No. I don't think so.

(Docket Entry No. 26, Plaintiff's Deposition, at 143-44).

11

## B. Conclusions of Law

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme

Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court

defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable

opportunity for discovery, the party opposing the motion must make an affirmative showing of the

need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v.</u>

<u>McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see</u> <u>Routman v. Automatic Data</u>

<u>Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required

showing of the respective parties as described by the Court in <u>Celotex</u>:

12

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material

13

factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>

\*     \*     \*

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.</u> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.</u> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

14

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1.  Complex cases are not necessarily inappropriate for summary judgment.

2.  Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.  The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.  As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there

15

is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

## A.     Retaliatory Discharge Claim

In its motion for summary judgment, Defendant contends that Plaintiff cannot establish a prima facie case of retaliatory discharge because she cannot prove the requisite causation, that is that her workers' compensation claim was a substantial factor in her termination. (Docket Entry No. 21, at 6). Defendants further argue that Plaintiff cannot establish pretext. Plaintiff responds that "when there is contradicting documentation and testimony as presented in this case, the jury may reject the Defendant's proffered reasons for termination to find intentional discrimination." (Docket Entry No 24, at 20-21). Plaintiff argues she has "presented specific admissible facts that realistically challenge the Defendant's proffered reasons for termination. The Plaintiff has presented (1) several factual disputes; (2) that are material to the outcome of the case; and (3) that create a genuine issue for trial." Id. at 17.

16

"In order to make out a prima facie case for retaliatory discharge, a plaintiff employee must prove that (1) she was an employee of the defendant at the time of the injury, (2) she made a claim against the defendant for workers' compensation benefits, (3) the defendant terminated her employment, and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate her employment." Cooper v. Wyndham Vacation Resorts, Inc., 570 F.Supp.2d 981, 985 (M.D. Tenn. 2008) (citing Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn.1993)). To prove the fourth element, "a plaintiff must show either direct or 'compelling circumstantial' evidence of a causal connection between the workers' compensation claim and the termination, not just the fact that the latter followed the former." Cooper, 570 F.Supp.2d at 985 (citing Frizzell v. Mohawk Indus., No. M2004-01598-COA-R3-CV, 2006 WL 1328773, *10 (Tenn. Ct. App. May 15, 2006)). The plaintiff's proof of causation by circumstantial evidence must be "direct and compelling circumstantial evidence." Newcomb v. Kohler Co. 222 S.W.3d 368, 391 (Tenn.Ct. App. 2006) (citations omitted).

As the Tennessee Court of Appeals summarized in Newcomb, numerous forms of circumstantial proof can be utilized to prove retaliatory discharge, including the following:

> the employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false.

Id (citations omitted). While not alone sufficient, "[t]emporal proximity may also serve as evidence of causation if the plaintiff's prior job performance was otherwise satisfactory." Cooper, 570 F.Supp.2d at 986 (emphasis added and citation omitted). See also Newcomb, 222 S.W.3d at

17

391 ("Moreover, an employee cannot rely on the mere short passage of time between the filing of a workers' compensation claim and subsequent termination to prove a prima facie case of retaliation.").

"A plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship." Id. Evidence of a "defendant's willingness to have the plaintiff return to work serves to undercut an argument for retaliatory intent." Cooper, 570 F.Supp.2d at 987-988 (citing Johnson v. St. Francis Hosp., Inc., 759 S.W.2d 925, 928 (Tenn. Ct. App. 1988)).

If a plaintiff establishes a prima facie case of retaliatory discrimination, "the defendant then bears the burden of proving that it had a 'legitimate non-pretextual reason for the employee's discharge.'" Cooper, 570 F.Supp.2d at 988 (quoting Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn. 1993)). If the employer presents a non-pretextual reason for the discharge, the "burden shifts back to the employee to prove the employer's explanation is pretextual . . . [with] 'specific admissible facts, which realistically challenge the defendant's stated reasons.'" Frizzell, 2006 WL 1328773 at *3 (citations omitted). This can be shown through proof that "the employer's reasons 'have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or if they were factors, by showing that they were jointly insufficient to motivate the discharge.' The employee, however, faces summary dismissal of his claim if he is unable to demonstrate that he could prove the employer's reason for the discharge was pretextual." Id. (citations omitted).

In Newcomb, the plaintiff was a career employee with several workers' compensation claims. 222 S.W.3d at 377. Prior to filing his final workers' compensation claim, the plaintiff

18

had never received a written warning for conduct violations. Id. at 378. After the claim, plaintiff

received a written warning in 2001, and was terminated approximately two years later for an

alleged second violation of company policy. Id. at 378-379. The case proceeded to trial and the

trial court denied the defendant's motion for directed verdict on the retaliatory discharge claim.

Id. at 381. On appeal, the appellate court determined that plaintiff presented sufficient

circumstantial evidence to prove causation. Id. at 395. The plaintiff testified that after he returned

to work, his supervisor harassed plaintiff about his injuries and his decision to sue the company

for workers' compensation benefits. Id. at 392-393. The plaintiff also presented the testimony of

several other witnesses to corroborate this harassment. Id at 392. The appellate court concluded

plaintiff presented sufficient proof for the jury to decide the issue of causation. Id. The appellate

court further held that plaintiff "presented circumstantial evidence tending to show that

[defendant's] management had a negative attitude toward his work-related injuries, had

knowledge of his prior workers' compensation claims, and failed to adhere to the established

policies set forth in the Associate Handbook," and thus, a reasonable jury could find pretext. Id.

at 395.

 Here, Plaintiff has demonstrated, and Defendant does not contest, that Plaintiff's proof

establishes the first three elements of her claim. Plaintiff was an employee at the time of her

injury, Plaintiff made a claim for workers' compensation benefits, and Defendant terminated

Plaintiff. The only contested prima facie element is causation – whether Plaintiff's claim for

workers' compensation benefits was a substantial factor in Defendant's motivation to terminate

her. It is undisputed that management knew about Plaintiff's workers' compensation claim.

Plaintiff contends that management treated her with a negative attitude and failed to comply with

established attendance policies. Specifically, in her opposition memorandum, Plaintiff cites as her proof of causation: Defendant questioned Plaintiff regarding the cause of her injury; management treated Plaintiff with a negative attitude; Defendant failed to properly accommodate Plaintiff; Plaintiff was "often" told she could not sit down[8]; Defendant denied her workers' compensation claim[9]; Defendant accused Plaintiff of theft; Plaintiff's medical appointments were improperly denied; and there was temporal proximity between the claim and termination. (Docket Entry No. 24, at 10-15).

Applying the other <u>Newcomb</u> factors, the Court concludes that Plaintiff has not presented proof that she received discriminatory treatment when compared to similarly situated employees, that Defendant's stated reason for discharge was false, or that there were marked changes in her performance evaluations after the workers' compensation claim. Prior to filing her claim for workers' compensation benefits, Plaintiff had been disciplined on three occasions, including a Decision Making Day coaching in August 2006. Because Plaintiff's prior job performance was not otherwise satisfactory, temporal proximity between the claim and termination does not serve as proof of causation. <u>See</u> <u>Cooper</u>, 570 F.Supp.2d at 986. Moreover, Defendant's designation of Plaintiff as "Re-Hire Recommended" "serves to undercut an argument for retaliatory intent." <u>Cooper</u>, 570 F.Supp.2d at 987-988

Here, assuming, <u>arguendo</u>, that Plaintiff could establish a causal connection between her

---

[8] The Court notes that this is inconsistent with Plaintiff's deposition testimony that "nobody ever said anything" about her using a chair after she obtained one and nothing happened as a result of her sitting down. <u>Id</u>. at 131, 136, 138.

[9] The response memorandum repeatedly asserts that Defendant denied Plaintiff's workers' compensation claim. However, Plaintiff acknowledged in her deposition CMI, not Defendant, denied her claim.

20

workers' compensation claim and discharge, the Court concludes that Plaintiff cannot demonstrate that Defendant's reasons for terminating Plaintiff was pretextual. Defendant has articulated a legitimate, non-pretextual reason for plaintiff's discharge: excessive absences in violation of Defendant's attendance policies. Excessive absenteeism is a "legitimate reason for termination." Carson v. AJN Holdings, No. 3:05-CV-294, 2006 WL 3361749, * 5 (E.D. Tenn. Nov. 20, 2006) (citing Anderson, 857 S.W.2d at 559).

Thus, the burden shifts to Plaintiff to show Defendant's motivation was pretextual. Plaintiff asserts that the revised attendance policy was not applied in a facially neutral manner because Plaintiff did not receive a personal discussion and management was not clear on what constituted excused absences. The memorandum also asserts that "Ms. Creel admitted that there were different disciplinary actions in the past that had been discussed and could have been taken against the Plaintiff, but were not exercised until after she sustained a work related injury. Ms. Creel admitted that the Defendant did not decide to follow through with their threat to terminate the Plaintiff until after she sustained a work related injury." Id. at 16. This assertion is false. Creel testified that Plaintiff received coachings prior to February 2007, one of which Creel was personally involved with, and that Plaintiff's past coachings were "at one of those levels previous to where – where she was at termination." (Docket Entry No. 30, Creel Deposition, at 27-28).

Plaintiff has not presented proof of pretext. Plaintiff was terminated pursuant to Defendant's uniform policies relating to attendance, which applied to all hourly employees. Plaintiff testified that she was not treated inconsistently with Defendant's attendance policies and that she was not aware of any facts to suggest that Defendant did not follow its attendance policies. The original policy and revised attendance policy both had four progressive levels of

21

discipline: verbal coaching, written coaching, Decision Making Day coaching, and termination. It is undisputed that prior to her injury, Plaintiff received a verbal coaching, written coaching, and Decision Making Day coaching. Plaintiff testified that as the Decision Making Day coaching, she knew the next step would be her termination.

Plaintiff signed a written acknowledgment of the revised attendance policy on October 5, 2006, a month before her injury. The revised attendance policy went into effect in November 2006, the month that Plaintiff was injured. The revised attendance policy provides for a personal discussion at three absence occurrences, but the fourth absence occurrence in a rolling six-month period results in the first level of discipline - advancement to the next level of coaching to any active coaching level. For summary judgment purposes, the Court accepts as true Plaintiff's contention that she did not receive a personal discussion. However, under the revised attendance policy, the fourth absence occurrence in a rolling six-month period would have qualified Plaintiff for termination as it is the next level of coaching to an active Decision Making Day coaching. Plaintiff testified that she had additional unauthorized absences in the six-month period preceding January 2007. According to Defendant, Plaintiff had five absence occurrences in the rolling six-month period before she was terminated in February 2007. Viewing the proof in the light most favorable to Plaintiff, the Court concludes that no reasonable juror could find that Defendant's asserted reason for the termination had no basis in fact, was not really a factor motivating the discharge, or was insufficient to motivate the discharge. Frizzell, 2006 WL 1328773 at *3 (citations omitted). Accordingly, Plaintiff cannot prevail on the retaliatory discharge claim as a matter of law.

Another consideration is whether there exist genuine issues of material disputed fact that

22

would prevent summary judgment resolution of the matter. The Court concludes that there are not. As outlined above, there are factual disputes about whether Plaintiff received a personal discussion in January 2007 and whether management stopped speaking to Plaintiff or treated her differently after she filed the workers' compensation claim. The Court concludes that taking all facts and inferences to be drawn therefrom in the light most favorable to Plaintiff, a reasonable jury could not return a verdict in favor of Plaintiff on the retaliatory discharge claim. Therefore, the factual disputes are not material and do not preclude summary judgment resolution. Liberty Lobby, 477 U.S. 248.

For the foregoing reasons, Defendant's motion for summary judgment should be granted on the retaliatory discharge claim.

**B.      Disability Discrimination Claim**

In its motion for summary judgment, Defendant contends that Plaintiff's disability discrimination claim fails because she has produced no proof that Defendant terminated her solely because of her disability. Defendant also contends that Plaintiff was not meeting its legitimate performance expectations and it was not required to provide a reasonable accommodation. Plaintiff responds that she was terminated as a direct result of her injury as evidenced by Defendant's denial of "Plaintiff's repeated requests for accommodations for her physical restriction . . . [.]" (Docket Entry No. 24, at 20). Plaintiff also argues that "she requested time off and to leave early as a result of her injury and was told she was being granted this request and then was terminated for her absences" and that "she had a physical limitation and missed work." Id.

The THA prohibits workplace discrimination based upon an employee's disability. The THA provides, in pertinent part:

23

> There shall be no discrimination in the hiring, firing and other terms and conditions of employment . . . of any private employer against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

Tenn. Code Ann. § 8-50-103(b). The THA also applies to the termination of private employees. See Chandler v. Specialty Tires of Am. (Tenn.), Inc., 283 F.3d 818, 824 (6th Cir. 2002). Further, the THA "embodies the definitions and remedies provided by the Tennessee Human Rights Act ('THRA')." Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000). Although Tennessee courts are not bound by federal law, as with claims under the THRA, Tennessee courts do look to federal law for guidance in enforcing claims arising under the THA. Id.

To make a prima facie case of disability discrimination under the THA, "a plaintiff must prove: (1) she was qualified for the position, (2) she was disabled, and (3) she suffered an adverse employment action because of that disability." Roberson v. Cendant Travel Serv., Inc., 252 F.Supp.2d 573, 583 (M.D. Tenn. 2002) (citing Barnes, 48 S.W.3d at 705). The third element can be proven with direct evidence of intentional discrimination or with indirect proof that "(1) the claimant is a member of the protected class; (2) the claimant's work performance met the employer's legitimate expectations; (3) the claimant sustained an adverse employment action; and (4) employees not in the protected class were treated more favorably." Barnes, 48 S.W.3d at 708. With the indirect method of proof, "[i]f the plaintiff makes out a prima facie case, the burden shifts to the employer to justify its action. If this justification is unbelievable on its face or is rebutted by the plaintiff, then the plaintiff's claim survives summary judgment and may go

24

forward." Watkins v. Shared Hosp. Servs. Corp., 852 F. Supp. 640, 644 (M.D. Tenn. 1994) (citation omitted).

Plaintiff principally bases her disability discrimination claim upon Defendant's failure to provide a reasonable accommodation. As a matter of law, an employer is not required to provide a reasonable accommodation under the THA. See Roberson, 252 F.Supp.2d at 583 ("the elements of the THA "do not include a 'reasonable accommodation' component"). As the Sixth Circuit noted, "[a] determination that an accommodation is required for the employee to perform the functions of the job ends the inquiry under Tennessee law, but does not do so under the ADA." Workman v. Frito-Lay, Inc., 165 F.3d 460, 468 n.9 (6th Cir. 1999). Thus, Plaintiff's assertion that Defendant violated the THA by failing to provide a reasonable accommodation is without merit.

It is undisputed for summary judgment purposes that Plaintiff sustained a disability as a result of her work injury. To prevail on her disability discrimination claim, Plaintiff must establish that she suffered an adverse employment action because of her disability. A court in this district has rejected the argument that a termination for excessive absences necessitated by a disability equated to termination "based solely on" the disability. In Roberson, the plaintiff asserted a claim under the THA for disability discrimination arguing that her "absences were due to her disability, and that Defendant knew or should have known that was the reason for her absences and not terminated her for those absences." 252 F.Supp.2d at 583. Judge Wiseman rejected this argument and granted summary judgment in favor of the defendant on the THA claim. The court held that plaintiff did not present sufficient facts to prove that she was handicapped or that Defendant terminated the employment because of the handicap. Id. In connection with the ADA claim, the court further held that plaintiff did not present proof that defendant fired her "solely because of her disability" as plaintiff was terminated for her absences, not her disability. Id. at 582-83.

25

Here, Plaintiff has not presented proof to establish that Defendant terminated her "based solely on" her disability. Plaintiff testified that she believed she was terminated for filing a workers' compensation claim, not because of her disability. Plaintiff was terminated pursuant to Defendant's uniform policies relating to attendance and Plaintiff testified that she was not treated inconsistently under these policies. Plaintiff provides no evidence from which a reasonable jury could conclude that this policy was enforced against her differently than as against other employees. For these reasons, Plaintiff's disability discrimination claim fails and Defendant's motion for summary judgment should be granted on this claim.

### C. Conclusion

For the reasons stated herein, the Defendant's motion for summary judgment should be granted in its entirety.

An appropriate Order is filed herewith.

Entered on this the ___10th___ day of June, 2009.

 

 

_____
WILLIAM J. HAYNES, JR,
United States District Judge